UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09-cr-00033 (LBS)

UNITED STATES OF AMERICA

-v-

JONATHAN CURSHEN,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO
TO VACATE HIS PREVIOUSLY ENTERED PLEA OF GUILTY**

Goldberg & Rimberg, PLLC
BY: Joseph A. Grob (JAG 7975)
115 Broadway
New York, New York 10006
(212) 697-3250

TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………..……………………………ii

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

POINT I

DEFENDANT'S PREVIOUSLY ENTERED  PLEA
 OF GUILTY SHOULD BE VACATED .......................................................................................2

   A.   Legal Standard on a Motion to Vacate a Plea....................................................................2

     i.   The Delay in Moving to Vacate. ...................................................................................3

     ii.   Defendant's Claim of Actual Innocence and the Lack of a Factual
       Basis for the Guilty Plea...............................................................................................8

       a.   The Disclosure Requirement, if any, was Satisfied by
         the General Disclosures on the Jefferies and Co. Website. ....................................9

     iii.   There is No Prejudice to the Government by
       Vacating the Previously Entered Guilty Plea................................................................12

POINT II

THE GUILTY PLEA SHOULD ALSO BE VACATED
BECAUSE IT WAS INVOLUNTARY..........................................................................................12

POINT III

THE INEFFECTIVE ASSISTANCE RENDERED TOI
 DEFENDANT BY HIS PREVIOUS COUNSEL WARRANTS
VACATING THE PREVIOUSLY  ENTERED GUILTY PLEA..................................................15

CONCLUSION..............................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Amiel v. United States*, 209 F.3d 195 (2d Cir. 2000)...................................................................16

*Benzon v. Morgan Stanley Distributors, Inc*., 420 F.3d 598 (6th Cir. 2005)..................................10

*Cuyler v. Sullivan,* 446 U.S. 335, 100 S. Ct. 1708 (1980).............................................................15

*Hoffman v. UBS-AG,* 591 F. Supp.2d 522 (S.D.N.Y.  2008)..........................................................10

*Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,*
   157 F.3d 933 (2d Cir. 1998)..........................................................................................9

*Irizarry v. United States*, 508 F.2d 960 (2d Cir. 1974)....................................................................8

*LaMagna v. United States*, 646 F.2d 775 (2d Cir.),
   *cert. denied*, 454 U.S. 898, 102 S. Ct. 399 (1981) .......................................................3

*Machibroda v. United States*, 368 U.S. 487, 82 S. Ct. 510 (1962)................................................13

*McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166 (1969) ...............................................3, 8

*Press v. Quick & Reilly*, Inc., 218 F. 3d 121 ( 2d Cir. 2000)..........................................................10

*States v. Schmidt*, 373 F.3d 100 (2d Cir. 2004) ...............................................................................2

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) ................................................15

*United States v. Adams*, 448 F.3d 49 (2d Cir. 2006) ....................................................................3, 8

*United States v. Barnes,* 604 F.2d 121 (2d Cir. 1979),
   *cert. denied,* 446 U.S. 907, 100 S. Ct. 1833 (1980) .....................................................11

*United States v. Curtis*, NO. 08 CR. 183 (LAP),
   2010 WL 2106168 (S.D.N.Y. May 19, 2010)................................................................9

*United States v. Doe*, 537 F.3d 204 (2d Cir. 2008)......................................................................2, 8

*United States v. Doyle*, 981 F.2d 591 (1st Cir. 1992). .....................................................................3

*United States v. Garcia*, 587 F.3d 509 (2d Cir. 2009)..................................................................3, 8

*United States v. Gonzalez,* 970 F.2d 1095 (2d Cir. 1992) .........................................................2, 14

*United States v. Laurenti*, 611 F.3d 530 (2d Cir. 2010),
   *cert. denied*,__ U.S.__,  __ S. Ct. __, 2011 WL 55793,
   79 USLW 3401 (January 10, 2011) ........................................................................10

*United States v. Lineback*, 330 F.3d 441 (6th Cir. 2003)..............................................12

*United States v. Lopez*, 385 F.3d 245 (2d Cir 2004)............................................3, 4, 12

*United States v. Marquez*, 909 F.2d 738 (2d Cir.1990) ...............................................13

*United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002)...........................................15, 16

*United States v. Skelly*, 442 F.3d 94 (2d Cir. 2006)........................................................9

*United States v. Stantini*, 85 F.3d 9 (2d Cir. 1996).....................................................16

*United States v. Szur*, 289 F.3d 200 (2d Cir. 2002) ......................................................9

*United States v. Torres,* 129 F.3d 710 (2d Cir. 1997)..................................................12

*Winkler v. Keane,* 7 F.3d 304 (2d Cir. 1993),
   *cert. denied*, 511 U.S. 1022, 114 S. Ct. 1407 (1994) .............................................16

## Other Authorities

Sand et al., *Modern Federal Jury Instructions* (2008), Instr. 57-20................................9

## Rules

Fed. R. Crim. P. 11 .....................................................................................................3, 8

Fed. R. Crim. P. 11(b)(3) ...............................................................................................3

Fed. R. Crim. P. 11(d)(2)(B)...........................................................................................2

iii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA | 09-cr-00033 (LBS) |
| -v- | |
| JONATHAN CURSHEN, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO TO VACATE HIS PREVIOUSLY ENTERED PLEA OF GUILTY

This memorandum of law in respectfully submitted on behalf of Defendant Jonathan Curshen and in connection with his motion to withdraw his previously entered plea of guilty in this case.

## PRELIMINARY STATEMENT

Defendant Jonathan Curshen moves to withdraw his previously entered plea of guilty in this case.  As will be set forth below, defendant maintains that he is actually innocent of the charges to which he pleaded guilty.  Further, defendant asserts that prior to pleading guilty, his attorney made certain misrepresentations and statements in order to induce him and/or coerce him to plead guilty, and accordingly, his guilty plea was involuntary.

Defendant maintains further that his prior attorneys rendered ineffective assistance and that they had actual conflicts of interest which caused them to coerce defendant to plead guilty rather than go to trial.

After the entry of the guilty plea, when defendant realized that his attorney made such false promises, he asked his then attorney to move to withdraw his plea, but his attorney refused.  Defendant ultimately sought and obtained new counsel and now moves to vacate his plea.

## STATEMENT OF FACTS

The statements of relevant facts are contained in the accompanying declarations of Jonathan Curshen ("Curshen Decla.") and Joseph A. Grob ("Grob Decla.") and will not be repeated herein.

## POINT I

## DEFENDANT'S PREVIOUSLY ENTERED
## PLEA OF GUILTY SHOULD BE VACATED

A.  <u>Legal Standard on a Motion to Vacate a Plea</u>.

Fed. R. Crim. P. 11 allows a defendant to withdraw a plea of guilty, after the plea but before sentencing, where a defendant can demonstrate that he has a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008); *See also United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir. 1992).

In determining whether there is a "fair and just' reason to warrant the withdrawal of a guilty plea, the Court should consider, among other things:

> (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the Government would be prejudiced by a withdrawal of the plea.

*United States v. Doe, supra*. 537 F.3d at 210-11; *United States v. Schmidt*, 373 F.3d 100, 102-103 (2d Cir. 2004).

2

A guilty plea is an unconditional admission of guilt and is "an admission of all the elements of a formal criminal charge," *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969).  As to those elements the plea is "as conclusive as a jury verdict." *LaMagna v. United States*, 646 F.2d 775, 778 (2d Cir.), *cert. denied*, 454 U.S. 898, 102 S. Ct. 399 (1981).  To that end, Fed. R. Crim. P. 11 requires that before adjudging a defendant guilty and before entering a judgment in connection with a guilty plea, the district court, "must determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3); *United States v. Garcia*, 587 F.3d 509, 514 (2d Cir. 2009).  If there is no factual basis for the plea of guilty, the plea must be vacated.  *See United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006).

        i.       The Delay in Moving to Vacate.

With respect to the amount of time that has elapsed between the plea and the motion to withdraw, the courts look more favorably on a motion to vacate made closer to the time of the guilty plea.  *See United States v. Lopez*, 385 F.3d 245, 254 (2d Cir 2004).  The Lopez court explained that

> [W]hile an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses.

Lopez, 385 F.3d at 254, quoting, *United States v. Doyle*, 981 F.2d 591, 595 (1st Cir. 1992).

The court explained further, however that "the fact of delay may not always cast suspicion on a defendant's reason for seeking withdrawal from his plea agreement" and that there may be other reasons for the delay.  *Lopez*, 385 F.3d at 254. One example of such excusable delay is where "the Government failed to fulfill its side of the bargain (as the defendant understood it)," and thus, "a delay may be consistent with the defendant's good faith expectation of the

3

Government's performance." *See Lopez,* 385 F.3d at 254.

In this case, the delay was occasioned, in part, by defendant's lack of knowledge that his prior attorney, Lawrence Ruggiero, made certain promises to him about the disposition and plea of guilty that defendant did not learn were false until sometime in late March or early April 2010.

Specifically, as set forth in the Curshen Decla., Mr. Ruggiero, was ineffective because he improperly induced and coerced defendant into pleading guilty by making certain promises to defendant that were not contained in the plea agreement. *See* Curshen Decla. at ¶¶ 41-45, 48-49. Defendant did not want to plead guilty unless the plea of guilty was going to cover not only the facts alleged in the information filed against him in this case, but any other potential charges that might be brought against him by the United States Department of Justice ("DOJ") in connection with the seizures and investigations going on relating to his Costa Rica offices. *See* Curshen Decla. at ¶ 40. Indeed, defendant would not have pleaded guilty without the promises made by Mr. Ruggiero. Curshen Decla. at ¶ 42.

The chronology of events outlined below is instructive as to how defendant was lulled and coerced into pleading guilty and as to how and when defendant discovered that his prior attorneys deceived him, prompting him to move to vacate his plea.

In April or May of 2009, defendant had several conversations with Mr. Ruggiero, who was working with Mr. Lombardino (defendant's original attorney), when Mr. Lombardino became ill. Curshen Decla. at ¶ 39. When Mr. Curshen met with Mr. Ruggiero, he seemed unfamiliar with the facts of the case and he did not even know the names of the parties involved. Curshen Decla. at ¶ 34. Mr. Ruggiero explained to defendant that he had reviewed what Mr. Lombardino had provided to him and that it was his opinion that signing a guilty plea was

4

defendant's best option.  *Id.*

Defendant responded that he was innocent and that he wanted to go to trial. Curshen Decla. at ¶ 35.  Mr.  Ruggiero told him that if he wanted to go forward in defending the charges, Mr.  Ruggiero would not represent him because he already had a "fully retained client" who was scheduled to start trial in September 2009.  *Id.*  Mr.  Ruggiero also told defendant that he would have to retain a new attorney for purposes of trial, knowing full well that defendant had no funds for that purpose.  Curshen Decla. at ¶¶ 35, 45.

Subsequently, after further negotiation with the Government, Mr.  Ruggiero told defendant that the Government had agreed to his specific requests, i.e., (a) that the agreement would be a global agreement; (b) that his bail conditions would be modified;  and (c) that his wife would be permitted to rejoin him in the United States with no fear of arrest.  Curshen Decla. at ¶¶ 42, 45.

On June 24, 2009, when defendant pleaded guilty before Magistrate Judge Pittman pursuant to a plea agreement, defendant stated that no promises other than the promises contained in the agreement had been made.  Curshen Decla. at ¶¶ 49-50; s*ee also* Exhibits I and J to the Curshen Decla.  Although the plea agreement did not contain the promises that Mr.  Ruggiero made to defendant concerning the change in the bail status, defendant's wife and a global disposition, those promises coupled with Mr.  Ruggiero's threat that he would not represent defendant at trial are what induced defendant to plead guilty.  *See* Curshen Decla. at ¶¶ 35-36, 40-42, 45, 49, 79.  The fact that Mr.  Ruggiero made such promises is further supported by the email sent from defendant's father, Andrian Curshen, to Mr.  Ruggiero in April 2010 (Exhibit G to the Curshen Decla.) and by defendant when he started asking for Mr.  Ruggiero to file a motion to withdraw the guilty plea.  *See* Exhibits K through M to the Curshen Decla.

From July 2009 through December 2009, defendant had little contact with Mr. Ruggiero.  Curshen Decla. at ¶¶ 51-54.  At that time, defendant  tried to replace Mr.  Ruggiero with several attorneys who might have been willing to undertake the representation had the DOJ agreed to release previously seized funds for such representation.  Curshen Decla. at ¶¶ 55-57.

In March of 2010, when defendant was trying to hire Ed Little to represent him, and to get funds released by DOJ to allow Mr. Little to represent him, the conversations with Mr. Little made it clear to defendant that DOJ did not consider their case against defendant to be resolved.  Defendant then come to understand clearly that Mr.  Ruggiero lied to him when he made the promises that induced defendant into pleading guilty.  It was then that defendant began to seek to withdraw his plea.  Curshen Decla. at ¶¶ 58-62.

On April 1, 2010, when defendant realized that the plea would not be global, and when he saw that he was unable to hire a new attorney, defendant asked Mr.  Ruggiero about vacating the guilty plea.   Curshen Decla. at ¶¶ 57-62, 68;  *see also* Exhibits K through M to the Curshen Decla.  From April 2010 through June 2010, defendant asked Mr. Ruggiero to move to vacate the plea, but Mr.  Ruggiero refused.  *See*  Curshen Decla. at ¶¶ 57-62, 68;  *see also* Exhibits K through M to the Curshen Decla.

In June of 2010, new counsel was appointed to represent Mr. Curshen.  Curshen Decla. at ¶ 69.  When new counsel entered the case, Mr. Curshen raised the subject of possibly vacating the plea but new counsel explained that he needed to first familiarize himself with the case.  *Id.*  New counsel first attempted to get the file from Mr.  Ruggiero but the file had very few materials.  Grob Decla. at ¶ 3.  Significantly absent from the prior attorney's file were copies of the audio recordings of the conversations between the undercover and defendant and defendant's alleged co-conspirator.  *Id.*

New counsel then requested copies of the discovery from the Government at which time the Government produced in excess of 93,000 pages on multiple computer disks as well as disks containing the audio recordings and several video recordings.  Grob Decla. at ¶ 4-5.  Counsel wanted to first review the discovery before deciding if there was viable motion to vacate.  Grob Decla. at ¶ 4.  Reviewing the documents and audio tapes took considerable time.  Grob Decla. at ¶ 6.  Further, because Mr. Curshen finally had a lawyer appointed to represent him in Florida in connection with the DOJ seizures in Costa Rica, counsel delayed the filing of a motion to vacate the plea in order to determine if new counsel in Florida could do what Mr.  Ruggiero claimed he had already done, *i.e.,* secure a global disposition for defendant.  Grob Decla. at ¶ 6.

In sum, defendant did not know that there was a problem, *i.e.,* that there was no global disposition (and that the other promises made by Mr.  Ruggiero were false), until late March or Early April 2010, when Ed Little informed him that DOJ did not consider his cases resolved.  Curshen Decla. at ¶¶ 57.  Once defendant discovered that there was no global disposition, he inquired of Mr.  Ruggiero about vacating his plea, but Mr.  Ruggiero refused.  Curshen Decla. at ¶¶ 60-62.  When Mr.  Ruggiero continued to refuse to file a motion to vacate the plea, defendant finally sought new counsel in the case.  Curshen Decla. at ¶¶ 61, 68.  Thus, the delay through June 10, 2010 was not occasioned by defendant.  Further the delay from June 10, 2010 to the filing of the instant motion was not caused by defendant who made requests for new counsel to move to vacate the plea.  Grob Decla. at ¶ 6.  Although Mr. Curshen wanted to pursue vacating the plea much sooner, new counsel needed time to become familiar with the case and research the issues before filing a motion to vacate.  *Id.*  Further, new counsel was hoping that perhaps a global disposition might be obtained that would certainly have addressed defendant's contention that his prior counsel made false promises.  Grob Decla. at ¶6.   Accordingly, although

there was considerable delay before the filing of the instant motion to vacate, there are specific reasons why no motion was filed previously and any delay should be excused.

        ii.      Defendant's Claim of Actual Innocence and
                 the Lack of a Factual Basis for the Guilty Plea.

In determining whether there was a factual basis for the plea, the court is not limited to an examination of the defendant's plea allocution, but may also look at "any facts on the record at the time of the plea proceeding." *United States v. Adams*, supra,  448 F.3d at 499, *citing Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1974); s*ee also United States v. Garcia*, 587 F.3d at 514.  The reason that the Court must examine the relationship between the law and the facts admitted by defendant which purportedly establish the basis for the plea of guilty is to

> protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."

*United States v. Adams, supra*, 448 F.3d at 499-500, quoting, *McCarthy v. United States*, 394 U.S. 459, 467, 89 S. Ct. 1166 (1969) (quoting Fed. R. Crim. P. 11 Advisory Comm. Note (1966))

Moreover, Courts are more willing to permit a plea withdrawal where there is a claim of actual innocence.  *See United States v. Doe,* 537 F.3d at 210-11.

The information filed in this case charged a conspiracy to commit securities fraud and travel act violation in the nature of commercial bribery.  *See* Exhibit E to the Curshen Decla. The information charges that defendant participated in a conspiracy with others and agreed to commit securities fraud by agreeing to sell securities traded on the penny stock exchange and by making secret commission of fee payments to the undercover and his so called "brokers" in exchange for purchases of IBOT securities and to hide those commissions from the brokers' customers.  *See* Exhibit E to the Curshen Decla.

The elements of a conspiracy charging securities fraud and a travel act violation involving commercial bribery are:

> First, that in connection with the purchase or sale of [securities] the defendant did any one or more of the following:
>
> (1) employed a device, scheme or artifice to defraud, or
>
> (2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or
>
> (3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.
>
> Second, that the defendant acted willfully, knowingly and with the intent to defraud.
>
> Third, that the defendant knowingly used, or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

*See United States v. Curtis*, NO. 08 CR. 183 (LAP), 2010 WL 2106168, *6  (S.D.N.Y. May 19, 2010), *citing*, Sand *et al*., *Modern Federal Jury Instructions* (2008), Instr. 57-20.

In this case, it is respectfully submitted that the plea allocution wherein defendant admits to paying secret commissions or bribes, under the facts of this case, does not constitute an admission of guilt to the conspiracy charged in this case because there was no requirement that fees or commissions be disclosed, and thus, no crime was committed.

> a.  The Disclosure Requirement, if any, was Satisfied by
>  the General Disclosures on the Jefferies and Co. Website.

Generally, there is no fiduciary duty "inherent in an ordinary broker/customer relationship." *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998); *United States v. Szur*, 289 F.3d 200, 208 (2d Cir. 2002); *United States v. Skelly*, 442 F.3d 94, 97 (2d Cir. 2006); *Hoffman v. UBS-AG,* 591 F. Supp. 2d 522, 533 (S.D.N.Y.

9

2008).  Further, any failure to disclose commissions and the like would only constitute securities

fraud if there is an intent to defraud.  *United States v. Laurenti*, 611 F.3d 530, 542 (2d Cir. 2010),

*cert. denied*,__ U.S.__,  __  S. Ct. __, 2011 WL 55793, 79 USLW 3401 (January 10, 2011).

Moreover, in certain cases, like this one, even a minimal disclosure on a firm's website can satisfy

the duty to disclose.  *Id.*; *see also  Benzon v. Morgan Stanley Distributors, Inc*., 420 F.3d 598, 612

(6th Cir. 2005) (the brokers met their disclosure obligations because of a prospectus disclosure

indicating that brokers may receive other or different compensation in certain circumstances);

*Press v. Quick & Reilly*, Inc., 218 F. 3d 121, 130 ( 2d Cir. 2000) (general disclosure in firms

prospectus and statements of additional information can satisfy disclosure obligation).

   In this case, the brokerage house executing trades on behalf of the customers was

Jefferies and Company ("Jefferies").  *See* Curshen Decla. at ¶ 13.

   At various locations within the Jefferies website, Jefferies discloses that it receives

additional compensation from third parties.  For example, the Jefferies conflicts of interest

disclosure outlines Jefferies policies on conflicts of interest and discloses the various potential

conflicts of interest that are likely to occur and discloses that Jefferies:

> receives or will receive from a person other than the client, an inducement
> in relation to a service provided to the client, in the form of monies, goods
> or services, other than the standard commission or fee for that service.

*See* Exhibit O to the Curshen Decla.

   Further, Jefferies Terms of Business  ("TOB") (exhibit P to the Curshen Decla.)

requires that each Jefferies customer acknowledge that such customer agrees to do business with

Jefferies notwithstanding the fact that there may be a conflict of interest including but not limited

to receiving "payments or other benefits" for placing an order.  *See* Exhibit P to the Curshen

Decla. at  § 13.7.

In light of the above, it is respectfully submitted that to the extent that any disclosure was required, such a duty to disclose was satisfied by the general disclosures on the Jefferies website to its customers that there may be additional fees or compensation paid by third parties to Jefferies or its brokers.  Thus, the so called illegal "agreement not to disclose" was meaningless because the disclosure on the website satisfied the obligation to disclose to the customers, and accordingly, there was no securities fraud conspiracy and defendant's admission of paying a secret commission or bribe does not constitute a crime in this case.  As such, defendant is actually innocent of the conspiracy charged in this case.

Further, although defendant admitted that there were commissions paid to a third party, namely the undercover officer in this case, defendant submits that there was never any intent to defraud.  *See* Curshen Decla. at 15.  Indeed, in the audio recordings of the conversation when the undercover asks defendant if the shares should "sit there" meaning that they should be held and not sold, defendant responds that the brokers/customers may sell the securities purchased if they so choose .  Thus, there was no effort to manipulate the market for the securities purchased by the undercover and no intent to defraud.  *See* Exhibit Q to the Curshen Decla. Moreover, no one at Jefferies agreed not to disclose commissions to their hypothetical customers.  Rather, the undercover alone demanded that the fees or commissions not be disclosed and defendant agreed.[1]

---

[1] It is well settled that a Government agent is never a co-conspirator and that an agreement between an individual and a Government agent is not a conspiracy.  *See United States v. Barnes,* 604 F.2d 121, 161 (2d Cir. 1979), *cert. denied,* 446 U.S. 907, 100 S. Ct. 1833 (1980).  The defense recognizes that the Government will argue that the conspiracy was between defendant and Bruce Grossman who worked for one of defendant's companies.  In reality, however, there were no customers and the agreement was with the Government agent, *i.e.,* Moore, who asked that the fees not be disclosed.

In light of all of the above, it is respectfully submitted that defendant committed no crime herein.

iii.   There is No Prejudice to the Government
by Vacating the Previously Entered Guilty Plea.

Prejudice to the Government, in the context of a plea withdrawal

typically refers to depriving the Government of the benefit of its bargain by having the burden of trial preparation suddenly thrust upon it, as well as the potential difficulty to the Government in securing evidence against the defendant that would have been easier to secure at an earlier moment in time. See, e.g., *United States v. Lineback*, 330 F.3d 441, 445 (6th Cir. 200*3*) (Gilman, J., concurring).

*United States v. Lopez*, *supra*, 385 F.3d at 254.

Although the conduct in this case took place in 2008, granting the defense motion to vacate the plea will not cause any prejudice to the Government.  This case was orchestrated by an undercover officer who is still available to testify and the vacating of the plea will not defeat such testimony.  Further, the Government still has at least one cooperator who can testify in favor of the Government and the Government has all the documents related to this case in their possession.  Because the vacating of the plea will in no way prevent the Government from conducting a trial, there is no prejudice to the Government.

## POINT II

## THE GUILTY PLEA SHOULD ALSO BE
## VACATED BECAUSE IT WAS INVOLUNTARY.

Where a defendant challenges the entry of a guilty plea based upon the involuntariness of the plea, the "defendant must raise a significant question about the voluntariness of the original plea" *United States v. Torres,* 129 F.3d 710, 715 (2d Cir. 1997).

In *Machibroda v. United States*, 368 U.S. 487, 493, 82 S. Ct. 510 (1962) the Court stated that "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."

In *United States v. Marquez*, 909 F.2d 738, 741-742 (2d Cir.1990), although the court found that the guilty plea was voluntary, the court acknowledged that threats to prosecute (or promises not to prosecute) a defendant's wife or other third party can impact upon the voluntariness of a guilty plea.

In this case, defendant's plea of guilty was involuntarily.  Defendant pleaded guilty because his prior attorney a) threatened him that if he proceeding to trial he would no longer represent him (Curshen Decla. at ¶¶35, 45); and b) made promises to him, purportedly made by the Government, which defendant believed.  Curshen Decla. at ¶¶ 40-45, 49.

Specifically, when defendant began to tell Mr.  Ruggiero that he wanted to take the case to trial, Mr.  Ruggiero told him that he could not try the case because he had another client who had "fully retained" him who came first.  Curshen Decla. at ¶¶ 35, 45.  Thus, Mr. Ruggiero essentially told defendant that if he did not plead guilty, Mr.  Ruggiero would not try the case.  This statement was extremely coercive because it gave defendant a Hobson's choice of pleading guilty, despite his protestations of innocence, or having no attorney to try his case.

To make matters worse, Mr. Ruggiero made three specific promises to defendant to induce him to plead guilty.  Curshen Decla. at ¶¶ 40-45, 49.  First, Mr. Ruggiero promised that he had spoken with the Government and that the disposition would be global, meaning it would include any other crimes that the Government was contemplating bringing against defendant.  *Id.* Second, defendant was promised that his bail conditions would be changed from strict to regular and that his ability to travel would be less restrictive.  *Id.*  Third, defendant was promised that his

wife, who had been told she was subject to arrest if she returned to New York, would not be prosecuted and that she could freely travel to New York with no problems.  Id.  This promise was particularly important to defendant because by June 2009, when he pleaded guilty, he had not seen his wife in approximately seven months because of the threats made to her by law enforcement when defendant's offices in Costa Rica were raided.  Curshen Decla. at ¶¶ 46.  Here, where Mr.  Ruggiero made specific promises (and a threat) that induced defendant to plead guilty, the plea of guilty cannot be viewed as voluntary.

Defendant recognizes that the Government will seek to argue that defendant's allegations should not be given any consideration because defendant's allegations "merely contradict the record," are "inherently incredible," or are "simply conclusory." *See United States v. Gonzalez*, *supra*, 970 F.2d at 1100.

In this case, there are more than just defendant's allegations.  First, in addition to defendant's allegations, there is an email sent by defendant's father to Mr. Ruggiero wherein he chastises Mr. Ruggiero for not doing what he promised.  *See* Curshen Decla at ¶¶ 42-46; Exhibit G to Curshen Decla.  Second, when defendant did not know what to say in connection with an allocution, Mr.  Ruggiero prepared a written allocution and had defendant read it to the Court. *See* Curshen Decla at ¶ 42; See also Exhibit F to the Curshen Decla.  Thus, the allegations herein are supported and corroborated with evidence beyond the mere allegation of the defendant.

In light of all of the above, it is respectfully submitted that defendant's entry of a plea of guilty in this case was not voluntary.

14

## POINT III

**THE INEFFECTIVE ASSISTANCE RENDERED
TO  DEFENDANT BY HIS PREVIOUS COUNSEL
WARRANTS  VACATING THE PREVIOUSLY
 ENTERED GUILTY PLEA**

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme

Court articulated the standards for evaluating claims of ineffective assistance of counsel in the

context of a criminal case.  *Strickland, supra*, 466 U.S. at 684, 104 S. Ct. at 2063,  The *Strickland*

Court fashioned a two-part test.  The Court stated that to succeed on a claim of ineffective

assistance, a defendant must demonstrate that "counsel's representation fell below an objective

standard of reasonableness measured by the prevailing professional norms," *Strickland,* 466 U.S.

at 687-688, 104 S. Ct. at 2064-2065, and that there is a reasonable possibility that the outcome

would have been different but for the attorney's ineffectiveness.  *Strickland,* 466 U.S. at 694-696,

104 S. Ct. at 2068-2069.  In other words, in addition to demonstrating that the attorney's conduct

fell below the prevailing norms, a defendant must demonstrate that he has been prejudiced by his

attorney's performance.  *Strickland,*  466 U.S. at 691-693, 104 S. Ct. at 2066-2068.


The *Strickland* Court, however, also recognized that there are certain situations

where ineffective assistance and the resulting prejudice may be presumed, such as where an

attorney has an actual conflict of interest.  *See Strickland,*  466 U.S. at 692, 104 S. Ct. at 2067; *see*

*also, Cuyler v. Sullivan,* 446 U.S. 335, 345-350, 100 S. Ct. 1708, 1716-1719 (1980); a*ccord,*

*United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002).

> An attorney has an actual, as opposed to a potential, conflict of
> interest when, during the course of the representation, the attorney's

> and defendant's interests diverge with respect to a material factual
> or legal issue or to a course of action.

*United States v. Schwarz, supra*, 283 F.3d at 91, *quoting, Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir. 1993), *cert. denied*, 511 U.S. 1022, 114 S. Ct. 1407 (1994) (internal quotation marks omitted).

Where there is an actual conflict of interest, a defendant does not need to meet the heavy burden of showing prejudice as is normally required in connection with an ineffective assistance claim. *Mickens v. Taylor*, 353 U.S. 162, 165-172, 122 S. Ct. 1237, 1240-1243 (2002). An ineffective assistance of counsel claim can also be sustained where a defendant can demonstrate that his attorney had an actual conflict of interest "that actually affected the adequacy of his representation." *Mickens v. Taylor, supra*, 353 U.S. at 171, 122 S. Ct. at 1243; *see also United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (prejudice is presumed where an ineffective assistance claim is based upon a conflict of interest).

In order to demonstrate that an attorney's conflict affected the adequacy of the representation, a defendant need not demonstrate that the outcome of the proceeding would have been different if not for the conflict

> but only "that some plausible alternative defense strategy or tactic might
> have been pursued but was not and that the alternative defense was
> inherently in conflict with or not undertaken due to the attorney's other
> loyalties or interests." *United States v. Stantini*, 85 F.3d  9, 16 (2d Cir.
> 1996).

*Amiel v. United States*, 209 F.3d 195, 199 (2d Cir. 2000).

In this case, Mr. Lombardino and Mr.  Ruggiero failed to review the bulk of the discovery in this case and failed to conduct any investigation (Curshen Aff. at ¶¶ 80-81) and failed to assist defendant in defending against possible charges related to the raid on his offices in

Costa Rica and/or negotiate a global settlement.  Curshen Decla. at ¶ 73.  Defendant maintains

further that both Mr. Lombardino and Mr. Ruggiero failed to properly investigate or review the

discovery in this case, in part, because they were laboring under a conflict whereby Mr.

Lombardino was representing Michael Krome, who allegedly testified or proffered in another

proceeding against defendant that related to the companies identified in the Curshen Aff at ¶ 2.

See Curshen Aff. at ¶ 30, 80-81.

   Mr.  Ruggiero had a further conflict because he chose (or threatened)  to defend

the interests of his "fully retained" client at trial and to sacrifice representing defendant in favor of

the other client, and thus, he told defendant that he would not represent him should defendant

reject the plea agreement and proceed to trial.  Curshen Decla. at ¶¶ 35, 45.

   In light of all of the above, it is respectfully submitted further that the actual

conflict of interest by both of defendant's prior attorneys warrants the vacating of the guilty plea

in this case.

## CONCLUSION

In light of all of the above, the defendant respectfully requests that the plea be vacated and this matter be set down for trial.

Dated:  New York, New York
        February 14, 2011

Respectfully submitted,

GOLDBERG & RIMBERG, PLLC

By:_____
Joseph A. Grob (JAG 7975)
115 Broadway
New York, New York 10006
(212) 697-3250

18