UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -v-

JONATHAN CURSHEN,

           Defendant.

09-cr-00033 (LBS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO VACATE HIS PREVIOUSLY ENTERED PLEA OF GUILTY**

Goldberg & Rimberg PLLC
BY: Joseph A. Grob (JAG 7975)
115 Broadway
New York, New York 10006
(212) 697-3250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

JONATHAN CURSHEN,

                      Defendant.

09-cr-00033 (LBS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO VACATE HIS PREVIOUSLY ENTERED PLEA OF GUILTY**

This memorandum of law in respectfully submitted on behalf of Defendant Jonathan Curshen ("defendant" or "Mr. Curshen") and in reply to the Government's memorandum of law in opposition to defendant's motion to withdraw his previously entered plea of guilty in this case (the "Gov. Mem.").

**PRELIMINARY STATEMENT**

Mr. Curshen has moved to withdraw his previously entered plea of guilty in this case. Mr. Curshen continues to maintain that he is actually innocent of the charges to which he pleaded guilty, that his prior attorneys lied to him and made threats and promises to induce him to plead guilty even though he was innocent, and that he agreed to plead guilty based upon the promises and threats made to him by his former attorneys. Further, Mr. Curshen maintains that his former attorneys rendered ineffective assistance by not reviewing the discovery, by making promises and threats to induce a guilty plea, and because his prior attorneys, Mr. Lombardino and

Mr. Ruggiero were laboring under conflicts of interest when they represented Mr. Curshen.[1]

## POINT I

### DEFENDANT'S PREVIOUSLY ENTERED PLEA OF GUILTY WAS INVOLUNTARY.

The Government contends that the motion to vacate the guilty plea should be denied. The Government argues, in part, that Mr. Curshen's declaration of innocence and the desire to withdraw the plea is self-serving. *See* Gov. Mem. at p. 14-16. The Government claims that the very first time that anyone complained about the threats and promises made to defendant by Mr. Ruggiero, was when defendant's father wrote an email to Mr. Ruggiero on April 9, 2010.

The Government's characterization is simply inaccurate. In December 2008, even before defendant received the final plea draft of the plea agreement dated May 21, 2009, defendant was given a nearly identical version of the plea agreements, at which time he refused to plead guilty because the plea agreement did not call for a global disposition. *Compare* Exhibit D to the Declaration of Jonathan Curshen in support of defendant's motion to vacate the Guilty Plea in this case (Curshen Decla.), *with* Exhibit I to the Curshen Decla; *See also* Cursen Decla. at ¶¶ 25-27.

Mr. Ruggiero knew that, among other things, securing a global disposition was of paramount importance to Mr. Curshen, and accordingly, prior to the entry of the plea of guilty by Mr. Curshen, Mr. Ruggiero made certain promises to him, namely: (a) that the agreement would be a global agreement/disposition; (b) that defendants bail conditions would be modified; and (c)

---

[1] In the Government s response to defendant's motion to vacate, the Government recites certain facts without citing to any sources. *See* Gov. Mem. at pp. 1-5. Many of the facts alleged in those pages, appear nowhere in the criminal complaint and information in this matter and are not based upon any personal knowledge. *Compare* Gov. Mem. pp. 1-5, *with* Exhibits C and E to the Curshen Decla.

2

that defendant's wife would be permitted to rejoin him in the United States with no fear of arrest. Curshen Decla. at ¶¶ 42, 45. Mr. Ruggiero also told defendant that if he adhered to his claim of innocence, Mr. Ruggiero would not represent defendant because Mr. Ruggiero had another "fully retained client" who was scheduled to go to trial. *Id.* Mr. Ruggiero also told defendant that he would have to retain a new attorney for purposes of trial, knowing full well that defendant had no funds for that purpose. Curshen Decla. at ¶¶ 35, 45.

Mr. Curshen found himself in a difficult position with his attorney urging a plea of guilty, while defendant was asserting his innocence. Once Mr. Ruggiero threatened not to try the case and told Mr. Curshen that the Government had agreed to his terms, Mr. Curshen felt he had no choice but to plead guilty, despite his belief in his own innocence. Curshen Decla. at ¶¶ 41-45.

When the plea was entered, defendant did not know that he had been lied to about the scope of the disposition, *i.e.*, that it would NOT be a "global" disposition with any other potential cases until March or April 2010, when Ed Little, Esq. told defendant that the Criminal Securities Fraud Section at the Department of Justice ("DOJ") did not believe that there was a global disposition and that they were still going to indict defendant for other charges. Curshen Decla. at ¶¶ 55-57. Thus, although there was some delay in making the claim that the plea was involuntary based upon promises and threats not contained on the record, the delay was occasioned by a lack of knowledge on the part of defendant that he was not receiving the "global" disposition for which he thought he had bargained.

It was immediately after discovering that Mr.Ruggiero misled him that defendant began to ask counsel, including Mr. Ruggerio, to seek to vacate his guilty plea. Curshen Decla. at ¶¶ 59-63.

The Government challenges Mr. Curshen and chastises him for failing to secure an

affidavit from his prior attorneys attesting to their ineffectiveness. Gov. Mem. at p. 16-17.  The Government also chastises Mr. Curshen for seeking advice on withdrawing his plea from an attorney who actually rendered the ineffective assistance.  Gov. Mem. at p. 16.  Here again, the Government's analysis is flawed.   First, when Mr. Curshen realized that there was an issue with respect to the promises made to him, he immediately contacted Mr. Ruggiero who refused to file a motion to vacate.  Curshen Decla. at ¶¶ 59-60.  Subsequently, Mr. Curshen sought. but was financially unable to retain, new counsel and he continued to press Mr. Ruggiero on the subject of withdrawing the plea until Mr. Ruggiero was relieved as counsel.  Although the Government addresses the issues with respect to the threats and promises made, the Government has failed to include any affidavits from Mr. Ruggiero or Mr. Lombardino which would/or should refute Mr. Curshen's allegations.  Certainly, an attorney accused of ineffective assistance would not want to submit an affidavit confirming that he or she rendered ineffective assistance.  By the same token, any attorney accused of ineffective assistance or coercing a plea would want to rebut those allegations.  Considering the fact that  "Curshen indisputably has waived the attorney-client privilege" with respect to his prior attorneys  by filing the instant motion (Gov. Mem. at p. 17), the absence of any affidavits challenging Mr. Curshen's serious allegations of ineffective assistance from the very attorneys who rendered said assistance speaks volumes.  Indeed, their silence is deafening.

      Further, Mr. Lombardino had an actual conflict because he represented Michael Krome in a criminal investigation where Krome spoke about defendant.  On or about February 17, 2011, after the instant motion to vacate was filed, defendant and Michael Krome were both indicted together on the same indictment in the Southern District of Florida under indictment number 11-cr-20131-JEM.  Thus, the Government's claim that there was no conflict is seriously

4

undermined in light of the new indictment in the Southern District of Florida that considers defendant to be a co-conspirator with Krome and others.  It is respectfully submitted further that had the Government known, and perhaps the Government did know, that Mr. Lomdardino was representing Mr. Krome and Mr. Curshen at the same time, the Government would have immediately asked for Mr. Lombardino's removal from the case and/or for a hearing to ensure that defendant understood and waived any conflict pursuant to *United States v. Curcio,* 680 F.2d 881 (2nd Cir. 1982).  As such, the Government should be esstopped from claiming that there was no conflict.

        The Government also argues that defendant should have said something at the time of the plea of guilty to advise the Court of the threats or promises made to induce him to plead guilty.  Gov. Mem. ¶¶ 14-17.  The Government's argument is naïve to say the least.  First, Mr. Ruggiero, worried that defendant would say that he was innocent during the allocution, prepared a type-written statement with a factual allocution for defendant to recite during the plea of guilty because defendant did not know what to say.  *See* Exhibit F to the Curshen Decla.  Indeed, when asked if any promises had been made other than the promises contained in the plea agreement, Defendant responded  "No" because Mr. Ruggiero told him how to answer the questions so that the Court would not reject the guilty plea.  Curshen Decla. at  ¶50; *see also* Curshen Decla. at ¶50, n. 5.  Thus, Mr. Ruggiero coached defendant and told him what to say to insure that the guilty plea would be accepted while knowing full well that defendant was asserting his factual innocence.

        Defendant maintains further that there is also prejudice in this case because had he gone to trial he would have been found not guilty because he committed no crime.

      i.      Defendant's Claim of Actual Innocence and
             the Lack of a Factual Basis for the Guilty Plea.

In determining whether there was a factual basis for the plea, the Court is not limited to an examination of the defendant's plea allocution, but may also look at "any facts on the record at the time of the plea proceeding." *United States v. Adams*, supra, 448 F.3d at 499, *citing Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1974); s*ee also United States v. Garcia*, 587 F.3d at 514.  The reason that the Court must examine the relationship between the law and the facts admitted by defendant which purportedly establish the basis for the plea of guilty is to

> protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."

*United States v. Adams, supra*, 448 F.3d at 499-500, *quoting*, *McCarthy v. United States*, 394 U.S. 459, 467, 89 S. Ct. 1166 (1969) (quoting Fed. R. Crim. P. 11 Advisory Comm. Note [1966]).

The information filed in this case charged a conspiracy to commit securities fraud and a travel act violation in the nature of commercial bribery.  *See* Exhibit E to the Curshen Decla.  The information charges that defendant participated in a conspiracy with others and agreed to commit securities fraud by agreeing to sell securities traded on the penny stock exchange and by making secret payments of commissions to the undercover and his so called "brokers" in exchange for purchases of IBOT securities and to hide those commissions from the brokers' customers.  *See* Exhibit E to the Curshen Decla.  While the Information does allege that there was manipulation of the securities market, the only manipulation alleged is that the fictitious brokers recruited by the undercover were going to "hold" or "keep" the stocks for a period of time.  *See* Exhibit E to the Curshen Decla. at ¶ 5.  However, the evidence produced by the Government during discovery, *i.e.,* the specific conversations with the undercover indicates there was NO agreement to manipulate stock by having the brokers hold it.  Curshen Decla. at ¶77,

n.6; *see also* Exhibit Q to the Curshen Decla.  In addition to the arguments previously raised, in the absence of market manipulation, there can be no intent to defraud and no securities fraud in this case. [2]  Moreover, and contrary to the allegations in the Government's opposition papers, Curshen does have a legal defense in that he never conspired to bribe brokers.  Rather, he agreed to pay fees to a non-broker, who had no fiduciary obligations to any potential customers, just as Curshen has no fiduciary obligations to the Jeffries customers.

The Government contends that even if defendant is correct and the securities fraud allegation must fail, the travel act conspiracy remains intact.  *See* Gov. Mem. at p. 13.  The Government is incorrect.

---

[2] Further, there was no agreement with any of the alleged brokers at Jeffries.  Rather, the agreement, if any, was between the undercover and the defendant.  Putting aside the issue that one cannot conspire with a Government (*United States v. Barnes,* 604 F.2d 121, 161 (2d Cir. 1979), *cert. denied,* 446 U.S. 907, 100 S. Ct. 1833 [1980]), neither the undercover nor Mr. Curshen owed any fiduciary duty to the alleged Jeffries customers.  Moreover, Curshen had no ability to communicate with Jeffries customers as he would never have known who such customers were.  Thus, it would have been impossible for him to disclose the commissions.

> Under New York law:
>
> A person is guilty of commercial bribing in the second degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter`s employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs.

*See* N.Y. Penal Law §180.00.[3]

In this case, the disclosures on the Jefferies & Company, Inc. ("Jefferies") website, Exhibit O and P to the Curshen Decla., make it clear that Jeffries, the employer of the brokers, knew that its employees sometimes received unreported compensation, and thus, Jeffries impliedly consented to any payments made to the brokers. Further, because Jefferies Terms of Business ("TOB") (Exhibit P to the Curshen Decla.) (http://www.jefferies.com/pdfs/TermsOfBusinessJIL.pdf) specifically requires that each Jefferies customer acknowledge that such customer agrees to do business with Jefferies notwithstanding the fact that there may be a conflict of interest including, but not limited to, receiving "payments or other benefits" for placing an order ( Exhibit P at  § 13.7), Jefferies customers had already consented to any commissions that were to be paid.  If the customer consented to the commission, there can be no commercial bribery.

Further, this case deals with Penny Stocks.  In the case of Penny Stocks:

---

[3] Commercial Bribery in the First Degree (N.Y. Penal Law 180.03) is defined as follows:

> A  person  is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon  any  employee, agent  or  fiduciary  without  the  consent  of  the latter's employer or principal, with intent to influence  his  conduct  in  relation  to  his employer's  or  principal's  affairs,  and when the value of the benefit conferred or offered or agreed  to  be  conferred  exceeds  one  thousand dollars  and  causes  economic  harm  to the employer or principal in an amount exceeding two hundred fifty dollars. . .

8

> It shall be unlawful for a broker or dealer to effect a transaction in any penny stock for or with the account of a customer unless, prior to effecting such transaction, the broker or dealer has furnished to the customer a document containing the information set forth in Schedule 15G, 240.15g100, and has obtained from the customer a signed and dated acknowledgment of receipt of the document.

*See* 17 C.F.R. 240.15g – 2.

Schedule 15G requires that a broker must disclose in writing to a customer, and that the customer must acknowledge, before the "penny stock" transaction is entered into, the "'*offer*' and the '*bid*' on the stock, and the '*compensation*' the salesperson and the firm receive for the trade.  17 C.F.R. 240.15g – 100.  http://www.sec.gov/investor/schedule15g.htm (emphasis as in original).

In this case, however, there is no allegation that Jefferies or its brokers (1) failed to provide a letter pursuant to schedule 15G or (2) that the broker's provided the incorrect information pursuant to 15G.  If the brokers actually provided the schedule 15G notification, it would be clear that both the Jefferies and the ultimate customer who bought the securities at issue must have known the securities prices and commissions, and accordingly, without the allegation or proof of the missing 15G correspondence, there can be no securities fraud or commercial bribery because all would have had to be disclosed. [4]

---

[4] The Government concedes that if there is any duty to disclose, that duty belongs only to the brokers. Gov. Mem. pp. 11-14.  Here, defendant, who was not a broker and the undercover, who was also not a broker, had no duty to disclose anything.  Indeed, there would have been no way for a customer to call defendant Curshen or his companies to even inquire as to the nature and amounts of any commissions.  Further, defendant Curshen had no control over what the so called brokers were going to tell their clients.  Thus, the so called agreement with the undercover, was an agreement between two people who owed no duty to disclose, and accordingly, defendant Curshen committed no crime by telling the undercover that nothing would be disclosed.

      iii.    <u>The Government Suffers No Prejudice by Vacating the Plea</u>.

The Government contends that there is prejudice in vacating the plea. The defense disagrees. This case was made by a federal agent who acted as a middleman. That Agent is still available to testify. Further, the case consists primarily of recorded conversations which have been fully preserved and which are still available for use at trial. The fact that a new AUSA or new federal agent takes over the case is of no moment. New AUSA's are assigned to cases all the time without any problems.

## CONCLUSION

In light of all of the above, the defendant respectfully requests that the plea be vacated and this matter be set down for trial.

Dated:  New York, New York
       April 22, 2011

                                              Respectfully submitted,

                                              GOLDBERG & RIMBERG, PLLC

                                              By:_____
                                                  Joseph A. Grob (JAG 7975)
                                            115 Broadway
                                            New York, New York 10006
                                            (212) 697-3250