UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: 

UNITED STATES OF AMERICA

:

       - v. -                                09 Cr. 033 (LBS)

:

JONATHAN CURSHEN,

:

                        Defendant.

:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S SENTENCING MEMORANDUM


                                          PREET BHARARA
                                          United States Attorney for the
                                          Southern District of New York
                                          Attorney for the United States
                                            of America.


AVI WEITZMAN
Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                     :

UNITED STATES OF AMERICA
                                                     :

            - v. -                            09 Cr. 033 (LBS)

                                                     :

JONATHAN CURSHEN,
                                                     :

                      Defendant.

                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

      The Government respectfully submits this memorandum for the Court's consideration in connection with the sentencing of the defendant Jonathan Curshen.  The Government respectfully submits that a sentence within the applicable guidelines range of 21 to 27 months is appropriate and "sufficient, but not greater than necessary, to comply with the purposes" of sentencing under 18 U.S.C. § 3553(a)(2).

## BACKGROUND

**A.**      **Curshen's Criminal Conduct**

      This case stems from an investigation conducted by the Federal Bureau of Investigation ("FBI") that utilized confidential informants and undercover FBI agents to pose as stockbrokers who, as part of a scheme to artificially inflate the price of stock, were willing to buy shares of stock in various companies in exchange for bribes that would be kept secret from the stockbrokers' customers.

As explained in more detail in the Complaint and Information against Curshen,[1] defendants Jonathan Curshen and Bruce Grossman (now a cooperating witness in this case) worked for an organization based in San Jose, Costa Rica called Red Sea Management Limited ("Red Sea"). One of the services that Grossman and Curshen offered to their clients was stock promotion. As part of their stock promotion scheme, Curshen and Grossman met with Andy Badolato, the CEO of Industrial Biotechnology ("IBOT"). Badolato controlled all of the free trading shares of IBOT. Badolato initially wanted Curshen's help in selling three million of his IBOT shares. Grossman and Curshen agreed that they could help Badolato promote the IBOT stock in exchange for a sizable payment. Over the course of several meetings, Curshen, Grossman, and Badolato negotiated the payment structure. They agreed that all three million IBOT shares would be sold by Red Sea. Once the shares were sold, they would deduct the expenses incurred from selling the stock (i.e., bribes, promotional materials, mailers, etc.). Of the remainder, Badolato would take half, and Curshen and Grossman would each take a quarter.

As part of that scheme, Curshen and Grossman met with an FBI undercover (the "UC") beginning in October 2007. The UC posed as a middleman who worked closely with a stable of corrupt stockbrokers who were willing, in exchange for secret bribes, to buy questionable stocks with their clients' money. Over the course of the next ten months, the UC had numerous conversations with Curshen and Grossman, many of which were consensually-recorded by the UC. The UC told Grossman and Curshen that the stockbrokers with whom the UC worked had complete discretion over their clients' accounts; *i.e.*, the stockbrokers made all the decisions on

---

[1] Curshen consented to the filing of the Information and to waive his right to a grand jury indictment on or about January 15, 2009.

behalf of their clients about what stocks to buy and sell.  (Such discretion over the stockbrokers' customers' accounts rendered the stockbrokers fiduciaries).  In addition, the UC told Grossman and Curshen that in exchange for a bribe of 25% of the gross amount of stock purchased, the UC could ensure that the stock that the clients purchased would not be resold.

Grossman and Curshen eventually reached an agreement with the UC to pay the UC a secret bribe of 25% in exchange for the UC's efforts to coordinate the purchase of the stock of IBOT.  The UC told Curshen and Grossman that he initially needed to do a "test run," in which he would purchase a small amount of stock in order to ensure that the scheme was functioning properly.  Accordingly, in June and July 2008, the UC purchased 85,000 shares of IBOT for approximately $76,050.  In return, Curshen and Grossman wired the UC approximately $19,000, which amounted to a 25% bribe.

As the summer progressed, the UC continued to discuss with Grossman and Curshen the fact that he would soon begin to make large purchases of stock in IBOT and other companies. On September 4, 2008, on the eve of the date when the large buying was scheduled to commence, the UC met Curshen at a hotel room in New York.  During their meeting, which was recorded, Curshen explained what Red Sea did.  Curshen explained that Red Sea was structured as a law firm so that any dealings that Red Sea's clients engaged in would be protected by the attorney-client privilege.  In addition, Curshen agreed that the UC would purchase approximately $3.2 million of IBOT stock over the next few months.  Curshen also told the UC that he would like the UC to provide the same services for additional stocks that Curshen was promoting. Finally, Curshen agreed to pay the UC a bribe of 30 percent, rather than 25 percent, going forward.  Curshen was arrested at the end of the meeting, based on a complaint dated September

4

4, 2008.  Grossman was arrested in New Orleans the following day.  The criminal complaint

against Curshen and Grossman charged them with conspiracy to commit securities fraud, in

violation of 18 U.S.C. § 371.

**B.      Curshen's Guilty Plea**

On or about June 24, 2009, Curshen pled guilty pursuant to the plea agreement he signed

and entered into with the Government (the "Plea Agreement").  The plea was taken before

Magistrate Judge Henry B. Pitman. In the plea agreement, Curshen agreed to plead guilty to a

single-count information (the "Information") charging him with participating in a conspiracy to

commit securities fraud and commercial bribery, from in or about October 2007 through in or

about September 2008, in violation of 18 U.S.C. § 371.  The Information covers the conduct

relating to the undercover operation and the scheme to commit securities fraud with respect to

IBOT.

In the plea agreement, the parties stipulated that "the value of the improper benefit to be

conferred was more than $70,000, but less than $120,000," yielding a total offense level of 16.

The Parties further stipulated: "Assuming the defendant clearly demonstrates acceptance of

responsibility, to the satisfaction of the Government, through his allocution and subsequent

conduct prior to the imposition of sentence, a 2-level reduction would be warranted, pursuant to

U.S.S.G. § 3E1.1(a).  Furthermore, assuming the defendant has accepted responsibility as

described in the previous sentence, an additional 1-level reduction would be warranted, pursuant

to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea

of guilty, thereby permitting the Government to avoid preparing for trial and permitting the

Court to allocate its resources efficiently."  Ultimately, given his criminal history category, the

Parties agreed that the stipulated Guidelines range was 12 to 18 months' imprisonment, and that a sentence within the stipulated Guidelines range would be a reasonable sentence under the factors set forth in 18 U.S.C. § 3553(a).

At the plea proceeding before Judge Pitman, Curshen explained the factual basis for his plea of guilty as follows:

> From October 2008 to September 2008 I conspired from outside New York with individuals including Bruce Grossman, Andrew Batalato and Trevor Ruiz to commit securities fraud and commercial bribery by knowingly and intentionally agreeing to pay and paying a middleman a 25 percent secret commission or bribe to have the stockbroker associates buy various securities of various companies, including the securities of Industrial Biotechnology Corporation, a Florida Corporation, for their customers, without disclosing those bribes or commissions to the customers.  In the course of the conspiracy we wired such bribes to a bank account in Manhattan.  . . . .  On or about July 7, 2008, I caused approximately $19,000 to be transferred via wire at an account at a bank located in Cyprus to an account located in Manhattan, New York.

(*Id.* at 14-15). Judge Pitman concluded that Curshen's plea was knowing and voluntary, that he was competent to enter a plea of guilty, and that the plea was supported by an independent basis in fact as to each of the essential elements.  (*Id.* at 17).  Judge Pitman recommended that Judge Sand accept Curshen's plea.  Judge Sand accepted Curshen's plea on or about July 28, 2009.

## C.    Curshen's Motion to Withdraw His Guilty Plea

On or about February 14, 2011, Curshen moved to withdaw his plea of guilty, claiming that he is actually innocent of the charges against him and there was no factual basis for the plea because (a) there was no requirement that his bribes to brokers be disclosed by the brokers, (b) the brokerage firm's website allegedly informed customers that the brokerage firm may receive money other than the standard commission, and (c) Curshen had no intent to defraud.  Def. Mem. 8-12.   Curshen also contended that his plea was involuntary because allegedly (a) defense

counsel threatened not to represent Curshen if Curshen proceeded to trial, and (b) Curshen was promised (i) that the plea would be a global resolution of other ongoing and unrelated investigations by a separate U.S. Attorney's Office, (ii) that his bail conditions would be changed, and (iii) that his wife would be free to travel to New York without risk of prosecution. In support of this motion, Curshen filed a 22 page affidavit. Among other false claims, Curshen's affidavit stated, contrary to his own prior sworn statements in his plea allocution in court, that "[w]ith respect to the transactions at issue, I never had the intent to defraud anyone." (Curshen Aff. ¶ 15). Prior to Curshen's filing of his motion to withdraw his guilty plea, Government counsel informed Curshen, through counsel, that any such motion may result in the loss of acceptance of responsibility.

On July 13, 2011, the District Court heard argument on Curshen's motion and ultimately denied without conducting a hearing Curshen's motion to withdraw his plea of guilty. In its ruling, the Court made clear that it believed that Curshen's factual allegations in his motion affidavit were false, stating:

> Mr. Curshen is not an unsophisticated, semi-literate individual. And being aware of the fact that promises that he hoped to obtain were not in the plea agreement, he went along with it. He went along with it not merely in his relationship with his counsel but he agreed under oath to all of the – all of the necessary elements. And sour grapes is [an] apt term for what has occurred here.

> There is no aspect of the application for withdrawal of the plea which has merit.

7/13/11 Tr. at 20.

**ARGUMENT**

**I.     CURSHEN IS NOT ENTITLED TO A THREE POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.**

It is well-settled that a defendant may not unilaterally avoid the obligations of, and stipulations in, a negotiated plea agreement.  *See United States* v. *Lopez*, 385 F.3d 245, 255 (2d Cir. 2004) (defendant may not unilaterally withdraw from his plea agreement without making strong showing that defendant did not freely and voluntarily enter into the plea agreement). Rather, a defendant who knowingly and voluntarily enters into a plea agreement is generally bound by the agreement's terms, *In re Altro*, 180 F.3d 372, 377 (2d Cir. 1999); *United States* v. *Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998); *United States* v. *Alexander*, 869 F.2d 91, 94 (2d Cir. 1989), even if it ultimately embodies a "mistaken prediction as to sentencing calculations," especially where the agreement specifically contemplated that such a possibility might occur. *United States* v. *Rosen*, 409 F.3d at 548-49 (enforcing plea agreement where agreement anticipated possibility of mistaken sentencing prediction and provided that withdrawal of guilty plea would not be permitted); *United States* v. *Roque*, 421 F.3d 118 (2d Cir. 2005) (enforcing appellate waiver in plea agreement even though parties did not contemplate, when entering into agreement, that Sentencing Guidelines would no longer be mandatory at time of sentencing).  As the Second Circuit has recognized, "plea agreements can have extremely valuable benefits to both sides — most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt." *United States* v. *Rosa*, 123 F.3d 94, 97 (2d Cir. 1997).

"The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States* v. *Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992); *accord United States* v. *Goodman*, 165 F.3d 169, 173 (2d Cir. 1999) (affirming denial of decision denying motion to withdraw plea based on defendant's recognition that "she faced a sentence of incarceration significantly longer than the sentence she anticipated when she entered into the plea agreement").

Section 3E1.1 of the Guidelines provides for the possibility of a three-level reduction in the offense level where the defendant, among other things, "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1.  A defendant who enters a guilty plea prior to trial "is not entitled to an adjustment under [Section 3E1.1] as a matter of right." U.S.S.G. § 3E1.1, comment. (n.3); *see also*, *e.g., United States* v. *Irabor*, 894 F.2d 554, 557 (2d Cir. 1990) ("A guilty plea does not, by itself, entitle a defendant to a reduced sentence under § 3E1.1."); *United States* v. *Hirsch*, 239 F.3d 221, 226 (2d Cir. 2001) ("Although a guilty plea is 'significant evidence' of acceptance of responsibility, it does not entitle the defendant 'to an adjustment . . . as a matter of right'; other 'conduct . . . that is inconsistent with . . . acceptance of responsibility' may outweigh a guilty plea.") (quoting U.S.S.G. § 3E1.1, comment. (n.3)). Among the factors a court may consider in determining whether a defendant has clearly accepted responsibility are whether the defendant truthfully admitted the conduct comprising the offense, and whether the defendant has falsely denied, or frivolously contested, any relevant conduct. *See* U.S.S.G. § 3E1.1, comment. (n.1).  Furthermore, any obstructive conduct "ordinarily indicates that the

defendant has not accepted responsibility for his criminal conduct." *See* U.S.S.G. § 3E1.1, comment. (n.4).

The Guidelines recognize that, given the "unique position" of a sentencing judge to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge on this subject is "entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5). The Second Circuit has echoed that principle, observing that because the "sentencing judge is in a unique position to evaluate a defendants's acceptance of responsibility . . . the determination of the sentencing judge is entitled to great deference on review and will not be disturbed unless it is without foundation." *United States* v. *McLean*, 287 F.3d 127, 133-34 (2d Cir. 2002) (citations and quotation marks omitted); *accord United States* v. *Reyes*, 9 F.3d 275 (2d Cir. 1993) ("Whether or not a defendant has accepted responsibility for the offense of conviction is a factual question as to which the district court's determination should not be disturbed unless it is without foundation." ) (quotation marks omitted).

Jonathan Curshen's motion to withdraw his guilty plea warrants taking away any credit for acceptance of responsibility.  First, and most importantly, Curshen's motion to withdraw included false claims of innocence that were contradicted by Curshen's own plea allocution.  In proclaiming his "actual innocence," Curshen has shown no acceptance of responsibility for his criminal conduct.  Second, Curshen's affidavit included false allegations that his counsel Lawrence Ruggierro made certain representations as to the scope of the plea agreement, including that the plea was a global resolution of all investigations of Curshen.  Those claims, though, were demonstrably false and disproven by the plea agreement, the plea allocution, and even a contemporaneous memorandum written by Mr. Ruggiero detailing his conversation with

Curshen regarding the Government's plea offer. Third, the Government expended substantial resources litigating his false (and frivolous) motion to withdraw. Given his false allegations, the Government would be well within its right to seek an additional two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. *See* U.S.S.G. § 3C1.1, comment. (n.4) (an example of conduct that warrants an enhancement for obstruction of justice includes "providing materially false information to a judge or magistrate"). However, the Government is not seeking that enhancement at this time. Nonetheless, the defendant's obstruction is a factor to be considered in determining whether to award him acceptance of responsibility credit. The Government respectfully submits that the Court should not award him any credit for acceptance of responsibility. *Cf. United States* v. *McLean*, 287 F.3d at 134 (affirming district court's decision to deny acceptance of responsibility credit to defendant who pled guilty but falsely denied quantities of narcotics than the court determined were attributable to him); *United States* v. *Ramirez*, 910 F.2d 1069, 1071 (2d Cir. 1990) (affirming denial of acceptance of responsibility credit where defendant pled guilty but minimized scope of his involvement in the charged offense by admitting only to involvement in a $120 drug deal).

## II.   A SENTENCE WITHIN THE APPLICABLE GUIDELINES RANGE IS REASONABLE AND APPROPRIATE.

### A.   Applicable Law

While the Sentencing Guidelines are no longer mandatory, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005); *see United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that

11

*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge.").  Indeed, the applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).

In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims" *United States* v. *Booker*, 543 U.S. at 260 (citations omitted); *see also id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.").

Apart from the Sentencing Guidelines, as the Court is well aware, the other factors set forth in Section 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two.  That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

12

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).  The court "shall impose a sentence sufficient, but not greater than necessary, to comply" with these purposes.  *Id.*

In light of *Booker*, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure.  *See United States* v. *Crosby*, 397 F.3d at 103.  First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence."  *Crosby*, 397 F.3d at 112.  Second, the Court must consider whether a departure from that Guidelines range is appropriate.  *Id*.  Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose.  *Id.* at 113.

**B.      Analysis**

For the reasons discussed below, Curshen's illegal conduct, weighed in view of the factors set forth in Section 3553(a), warrants a sentence of imprisonment within the applicable Guidelines range of 21 to 27 months' imprisonment.

A substantial sentence is warranted to reflect the seriousness of the offense ad the defendant's role in the offense.  Through lies and deception, Curshen and his co-conspirators schemed to defraud investors in IBOT stock by paying secret, under-the-table bribes to a team of corrupt stock brokers to cause them to purchase and hold stock in IBOT for their clients, without any regard for the suitability or merit of any such investment. The scheme was a classic pump and dump scheme, where Curshen and his co-conspirators (who controlled the IBOT stock that they were promoting) sought to artificially drive the price of the stock up by selling their stock to unwitting investors through corrupt stockbrokers, and then cash out their earnings, leaving the defrauded investors left with over-valued stock.  Curshen and his co-conspirators arranged for the UC – who they believed controlled the corrupt stockbrokers -- to purchase millions of dollars of IBOT stock through this corrupt scheme in return for secret and illegal payments to the stockbrokers.  Curshen was a leader of Red Sea, the "stock promotion" company, and was motivated to participate in the scheme in the name of greed, believing that, at the end, he would earn hundreds of thousands – if not millions – of dollars in illicit profits.  Indeed, in one recorded conversation with the UC, co-conspirator Bruce Grossman told the UC that over the next six months the scheme could net each of them $10 million in profit.  It is precisely that desire to earn easy money for so little work that motivated Curshen to deceive, cheat, and harm investors in order to inflate the value of his ownership interest in IBOT stock.

Moreover, the scheme was complex and sophisticated and, as such, should be punished severely.  The defendant and his co-conspirators ran Red Sea, their "stock promotion" company, from the supposed safety of San Jose, Costa Rica, where they hoped to cheat U.S. investors with impunity.  Furthermore, they purported to structure their company as a law firm in an effort to

shield Red Sea's dealings with its clients from law enforcement by cloaking the company with the attorney-client privilege.  Because of its sophisticated nature, schemes such as the defendant's are difficult to detect, investigate and prosecute.  The sentence in this case should reflect that.

In short, a substantial sentence is necessary in this case to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to deter the defendant and others from engaging in similar criminal conduct.

## CONCLUSION

The Government respectfully submits that, for the reasons explained above, Jonathan Curshen should be sentenced to a substantial term of imprisonment consistent with the advisory Guidelines of 21 to 27 months' imprisonment.

Dated:   New York, New York
         September 2, 2011

                              Respectfully submitted,
                              PREET BHARARA
                              United States Attorney


                         By:  /s/ Avi Weitzman
                              Avi Weitzman
                              Assistant United States Attorneys
                              Tel. No.: (212) 637-1205

## AFFIRMATION OF SERVICE

AVI WEITZMAN hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.      I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.      On September 2, 2011, I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by electronic mail and the Court's Electronic Case Filing system on:

Joseph Grob, Esq.
Counsel for Jonathan Curshen

3.      I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated:      New York, New York
            September 2, 2011


                                        /s/ Avi Weitzman
-
                                        AVI WEITZMAN

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                                :

UNITED STATES OF AMERICA

                                                :

          - v. -                             09 Cr. 033 (LBS)

                                                :

JONATHAN CURSHEN,

                                                :

                       Defendant.

                                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

 

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
           of America.

AVI WEITZMAN
Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

UNITED STATES OF AMERICA

                                    :

        - v. -                         09 Cr. 033 (LBS)

                                      :

JONATHAN CURSHEN,

                                    :

               Defendant.

                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum for the Court's consideration in connection with the sentencing of the defendant Jonathan Curshen.  The Government respectfully submits that a sentence within the applicable guidelines range of 21 to 27 months is appropriate and "sufficient, but not greater than necessary, to comply with the purposes" of sentencing under 18 U.S.C. § 3553(a)(2).

## BACKGROUND

**A.**      **Curshen's Criminal Conduct**

This case stems from an investigation conducted by the Federal Bureau of Investigation ("FBI") that utilized confidential informants and undercover FBI agents to pose as stockbrokers who, as part of a scheme to artificially inflate the price of stock, were willing to buy shares of stock in various companies in exchange for bribes that would be kept secret from the stockbrokers' customers.

2

As explained in more detail in the Complaint and Information against Curshen,[1]

defendants Jonathan Curshen and Bruce Grossman (now a cooperating witness in this case)

worked for an organization based in San Jose, Costa Rica called Red Sea Management Limited

("Red Sea").  One of the services that Grossman and Curshen offered to their clients was stock

promotion.  As part of their stock promotion scheme, Curshen and Grossman met with Andy

Badolato, the CEO of Industrial Biotechnology ("IBOT").  Badolato controlled all of the free

trading shares of IBOT.  Badolato initially wanted Curshen's help in selling three million of his

IBOT shares.  Grossman and Curshen agreed that they could help Badolato promote the IBOT

stock in exchange for a sizable payment.  Over the course of several meetings, Curshen,

Grossman, and Badolato negotiated the payment structure.  They agreed that all three million

IBOT shares would be sold by Red Sea.  Once the shares were sold, they would deduct the

expenses incurred from selling the stock (i.e., bribes, promotional materials, mailers, etc.).  Of

the remainder, Badolato would take half, and Curshen and Grossman would each take a quarter.

As part of that scheme, Curshen and Grossman met with an FBI undercover (the "UC")

beginning in October 2007.  The UC posed as a middleman who worked closely with a stable of

corrupt stockbrokers who were willing, in exchange for secret bribes, to buy questionable stocks

with their clients' money.  Over the course of the next ten months, the UC had numerous

conversations with Curshen and Grossman, many of which were consensually-recorded by the

UC.  The UC told Grossman and Curshen that the stockbrokers with whom the UC worked had

complete discretion over their clients' accounts; i.e., the stockbrokers made all the decisions on

---

[1] Curshen consented to the filing of the Information and to waive his right to a grand jury
indictment on or about January 15, 2009.

behalf of their clients about what stocks to buy and sell. (Such discretion over the stockbrokers'
customers' accounts rendered the stockbrokers fiduciaries). In addition, the UC told Grossman
and Curshen that in exchange for a bribe of 25% of the gross amount of stock purchased, the UC
could ensure that the stock that the clients purchased would not be resold.

Grossman and Curshen eventually reached an agreement with the UC to pay the UC a
secret bribe of 25% in exchange for the UC's efforts to coordinate the purchase of the stock of
IBOT. The UC told Curshen and Grossman that he initially needed to do a "test run," in which
he would purchase a small amount of stock in order to ensure that the scheme was functioning
properly. Accordingly, in June and July 2008, the UC purchased 85,000 shares of IBOT for
approximately $76,050. In return, Curshen and Grossman wired the UC approximately $19,000,
which amounted to a 25% bribe.

As the summer progressed, the UC continued to discuss with Grossman and Curshen the
fact that he would soon begin to make large purchases of stock in IBOT and other companies.
On September 4, 2008, on the eve of the date when the large buying was scheduled to
commence, the UC met Curshen at a hotel room in New York. During their meeting, which was
recorded, Curshen explained what Red Sea did. Curshen explained that Red Sea was structured
as a law firm so that any dealings that Red Sea's clients engaged in would be protected by the
attorney-client privilege. In addition, Curshen agreed that the UC would purchase approximately
$3.2 million of IBOT stock over the next few months. Curshen also told the UC that he would
like the UC to provide the same services for additional stocks that Curshen was promoting.
Finally, Curshen agreed to pay the UC a bribe of 30 percent, rather than 25 percent, going
forward. Curshen was arrested at the end of the meeting, based on a complaint dated September

4, 2008.  Grossman was arrested in New Orleans the following day.  The criminal complaint against Curshen and Grossman charged them with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371.

**B.      Curshen's Guilty Plea**

On or about June 24, 2009, Curshen pled guilty pursuant to the plea agreement he signed and entered into with the Government (the "Plea Agreement").  The plea was taken before Magistrate Judge Henry B. Pitman. In the plea agreement, Curshen agreed to plead guilty to a single-count information (the "Information") charging him with participating in a conspiracy to commit securities fraud and commercial bribery, from in or about October 2007 through in or about September 2008, in violation of 18 U.S.C. § 371.  The Information covers the conduct relating to the undercover operation and the scheme to commit securities fraud with respect to IBOT.

In the plea agreement, the parties stipulated that "the value of the improper benefit to be conferred was more than $70,000, but less than $120,000," yielding a total offense level of 16. The Parties further stipulated: "Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction would be warranted, pursuant to U.S.S.G. § 3E1.1(a).  Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1-level reduction would be warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently."  Ultimately, given his criminal history category, the

Parties agreed that the stipulated Guidelines range was 12 to 18 months' imprisonment, and that

a sentence within the stipulated Guidelines range would be a reasonable sentence under the

factors set forth in 18 U.S.C. § 3553(a).

At the plea proceeding before Judge Pitman, Curshen explained the factual basis for his

plea of guilty as follows:

> From October 2008 to September 2008 I conspired from outside New York with
> individuals including Bruce Grossman, Andrew Batalato and Trevor Ruiz to
> commit securities fraud and commercial bribery by knowingly and intentionally
> agreeing to pay and paying a middleman a 25 percent secret commission or bribe
> to have the stockbroker associates buy various securities of various companies,
> including the securities of Industrial Biotechnology Corporation, a Florida
> Corporation, for their customers, without disclosing those bribes or commissions
> to the customers.  In the course of the conspiracy we wired such bribes to a bank
> account in Manhattan.  . . . .  On or about July 7, 2008, I caused approximately
> $19,000 to be transferred via wire at an account at a bank located in Cyprus to an
> account located in Manhattan, New York.

(*Id.* at 14-15). Judge Pitman concluded that Curshen's plea was knowing and voluntary, that he

was competent to enter a plea of guilty, and that the plea was supported by an independent basis

in fact as to each of the essential elements.  (*Id.* at 17).  Judge Pitman recommended that Judge

Sand accept Curshen's plea.  Judge Sand accepted Curshen's plea on or about July 28, 2009.

## C.    Curshen's Motion to Withdraw His Guilty Plea

On or about February 14, 2011, Curshen moved to withdaw his plea of guilty, claiming

that he is actually innocent of the charges against him and there was no factual basis for the plea

because (a) there was no requirement that his bribes to brokers be disclosed by the brokers, (b)

the brokerage firm's website allegedly informed customers that the brokerage firm may receive

money other than the standard commission, and (c) Curshen had no intent to defraud.  Def.

Mem. 8-12.   Curshen also contended that his plea was involuntary because allegedly (a) defense

counsel threatened not to represent Curshen if Curshen proceeded to trial, and (b) Curshen was promised (i) that the plea would be a global resolution of other ongoing and unrelated investigations by a separate U.S. Attorney's Office, (ii) that his bail conditions would be changed, and (iii) that his wife would be free to travel to New York without risk of prosecution. In support of this motion, Curshen filed a 22 page affidavit.  Among other false claims, Curshen's affidavit stated, contrary to his own prior sworn statements in his plea allocution in court, that "[w]ith respect to the transactions at issue, I never had the intent to defraud anyone." (Curshen Aff. ¶ 15).  Prior to Curshen's filing of his motion to withdraw his guilty plea, Government counsel informed Curshen, through counsel, that any such motion may result in the loss of acceptance of responsibility.

On July 13, 2011, the District Court heard argument on Curshen's motion and ultimately denied without conducting a hearing Curshen's motion to withdraw his plea of guilty.  In its ruling, the Court made clear that it believed that Curshen's factual allegations in his motion affidavit were false, stating:

> Mr. Curshen is not an unsophisticated, semi-literate individual.  And being aware of the fact that promises that he hoped to obtain were not in the plea agreement, he went along with it.  He went along with it not merely in his relationship with his counsel but he agreed under oath to all of the  – all of the necessary elements. And sour grapes is [an] apt term for what has occurred here.
>
> There is no aspect of the application for withdrawal of the plea which has merit.

7/13/11 Tr. at 20.

7

**ARGUMENT**

**I.    CURSHEN IS NOT ENTITLED TO A THREE POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.**

It is well-settled that a defendant may not unilaterally avoid the obligations of, and stipulations in, a negotiated plea agreement. *See United States* v. *Lopez*, 385 F.3d 245, 255 (2d Cir. 2004) (defendant may not unilaterally withdraw from his plea agreement without making strong showing that defendant did not freely and voluntarily enter into the plea agreement). Rather, a defendant who knowingly and voluntarily enters into a plea agreement is generally bound by the agreement's terms, *In re Altro*, 180 F.3d 372, 377 (2d Cir. 1999); *United States* v. *Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998); *United States* v. *Alexander*, 869 F.2d 91, 94 (2d Cir. 1989), even if it ultimately embodies a "mistaken prediction as to sentencing calculations," especially where the agreement specifically contemplated that such a possibility might occur. *United States* v. *Rosen*, 409 F.3d at 548-49 (enforcing plea agreement where agreement anticipated possibility of mistaken sentencing prediction and provided that withdrawal of guilty plea would not be permitted); *United States* v. *Roque*, 421 F.3d 118 (2d Cir. 2005) (enforcing appellate waiver in plea agreement even though parties did not contemplate, when entering into agreement, that Sentencing Guidelines would no longer be mandatory at time of sentencing). As the Second Circuit has recognized, "plea agreements can have extremely valuable benefits to both sides — most notably, the defendant gains reasonable certainty as to the extent of his liability and punishment, and the Government achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt." *United States* v. *Rosa*, 123 F.3d 94, 97 (2d Cir. 1997).

"The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States* v. *Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992); *accord United States* v. *Goodman*, 165 F.3d 169, 173 (2d Cir. 1999) (affirming denial of decision denying motion to withdraw plea based on defendant's recognition that "she faced a sentence of incarceration significantly longer than the sentence she anticipated when she entered into the plea agreement").

Section 3E1.1 of the Guidelines provides for the possibility of a three-level reduction in the offense level where the defendant, among other things, "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1.  A defendant who enters a guilty plea prior to trial "is not entitled to an adjustment under [Section 3E1.1] as a matter of right." U.S.S.G. § 3E1.1, comment. (n.3); *see also*, *e.g., United States* v. *Irabor*, 894 F.2d 554, 557 (2d Cir. 1990) ("A guilty plea does not, by itself, entitle a defendant to a reduced sentence under § 3E1.1."); *United States* v. *Hirsch*, 239 F.3d 221, 226 (2d Cir. 2001) ("Although a guilty plea is 'significant evidence' of acceptance of responsibility, it does not entitle the defendant 'to an adjustment . . . as a matter of right'; other 'conduct . . . that is inconsistent with . . . acceptance of responsibility' may outweigh a guilty plea.") (quoting U.S.S.G. § 3E1.1, comment. (n.3)). Among the factors a court may consider in determining whether a defendant has clearly accepted responsibility are whether the defendant truthfully admitted the conduct comprising the offense, and whether the defendant has falsely denied, or frivolously contested, any relevant conduct. *See* U.S.S.G. § 3E1.1, comment. (n.1).  Furthermore, any obstructive conduct "ordinarily indicates that the

defendant has not accepted responsibility for his criminal conduct." *See* U.S.S.G. § 3E1.1, comment. (n.4).

The Guidelines recognize that, given the "unique position" of a sentencing judge to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge on this subject is "entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5). The Second Circuit has echoed that principle, observing that because the "sentencing judge is in a unique position to evaluate a defendants's acceptance of responsibility . . . the determination of the sentencing judge is entitled to great deference on review and will not be disturbed unless it is without foundation." *United States* v. *McLean*, 287 F.3d 127, 133-34 (2d Cir. 2002) (citations and quotation marks omitted); *accord United States* v. *Reyes*, 9 F.3d 275 (2d Cir. 1993) ("Whether or not a defendant has accepted responsibility for the offense of conviction is a factual question as to which the district court's determination should not be disturbed unless it is without foundation." ) (quotation marks omitted).

Jonathan Curshen's motion to withdraw his guilty plea warrants taking away any credit for acceptance of responsibility.  First, and most importantly, Curshen's motion to withdraw included false claims of innocence that were contradicted by Curshen's own plea allocution.  In proclaiming his "actual innocence," Curshen has shown no acceptance of responsibility for his criminal conduct.  Second, Curshen's affidavit included false allegations that his counsel Lawrence Ruggierro made certain representations as to the scope of the plea agreement, including that the plea was a global resolution of all investigations of Curshen.  Those claims, though, were demonstrably false and disproven by the plea agreement, the plea allocution, and even a contemporaneous memorandum written by Mr. Ruggiero detailing his conversation with

10

Curshen regarding the Government's plea offer.  Third, the Government expended substantial resources litigating his false (and frivolous) motion to withdraw.  Given his false allegations, the Government would be well within its right to seek an additional two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  *See* U.S.S.G. § 3C1.1, comment. (n.4) (an example of conduct that warrants an enhancement for obstruction of justice includes "providing materially false information to a judge or magistrate"). However, the Government is not seeking that enhancement at this time.  Nonetheless, the defendant's obstruction is a factor to be considered in determining whether to award him acceptance of responsibility credit. The Government respectfully submits that the Court should not award him any credit for acceptance of responsibility.  *Cf. United States* v. *McLean*, 287 F.3d at 134 (affirming district court's decision to deny acceptance of responsibility credit to defendant who pled guilty but falsely denied quantities of narcotics than the court determined were attributable to him); *United States* v. *Ramirez*, 910 F.2d 1069, 1071 (2d Cir. 1990) (affirming denial of acceptance of responsibility credit where defendant pled guilty but minimized scope of his involvement in the charged offense by admitting only to involvement in a $120 drug deal).

II.    **A SENTENCE WITHIN THE APPLICABLE GUIDELINES RANGE IS REASONABLE AND APPROPRIATE.**

   A.    **Applicable Law**

   While the Sentencing Guidelines are no longer mandatory, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005); *see United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that

*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge.").  Indeed, the applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).

In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims" *United States* v. *Booker*, 543 U.S. at 260 (citations omitted); *see also id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.").

Apart from the Sentencing Guidelines, as the Court is well aware, the other factors set forth in Section 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two.  That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).  The court "shall impose a sentence sufficient, but not greater than necessary, to comply" with these purposes.  *Id.*

In light of *Booker*, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure.  *See United States* v. *Crosby*, 397 F.3d at 103.  First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence."  *Crosby*, 397 F.3d at 112.  Second, the Court must consider whether a departure from that Guidelines range is appropriate.  *Id.*  Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose.  *Id.* at 113.

**B.    Analysis**

For the reasons discussed below, Curshen's illegal conduct, weighed in view of the factors set forth in Section 3553(a), warrants a sentence of imprisonment within the applicable Guidelines range of 21 to 27 months' imprisonment.

A substantial sentence is warranted to reflect the seriousness of the offense ad the defendant's role in the offense.  Through lies and deception, Curshen and his co-conspirators schemed to defraud investors in IBOT stock by paying secret, under-the-table bribes to a team of corrupt stock brokers to cause them to purchase and hold stock in IBOT for their clients, without any regard for the suitability or merit of any such investment. The scheme was a classic pump and dump scheme, where Curshen and his co-conspirators (who controlled the IBOT stock that they were promoting) sought to artificially drive the price of the stock up by selling their stock to unwitting investors through corrupt stockbrokers, and then cash out their earnings, leaving the defrauded investors left with over-valued stock.  Curshen and his co-conspirators arranged for the UC – who they believed controlled the corrupt stockbrokers -- to purchase millions of dollars of IBOT stock through this corrupt scheme in return for secret and illegal payments to the stockbrokers.  Curshen was a leader of Red Sea, the "stock promotion" company, and was motivated to participate in the scheme in the name of greed, believing that, at the end, he would earn hundreds of thousands – if not millions – of dollars in illicit profits.  Indeed, in one recorded conversation with the UC, co-conspirator Bruce Grossman told the UC that over the next six months the scheme could net each of them $10 million in profit.  It is precisely that desire to earn easy money for so little work that motivated Curshen to deceive, cheat, and harm investors in order to inflate the value of his ownership interest in IBOT stock.

Moreover, the scheme was complex and sophisticated and, as such, should be punished severely.  The defendant and his co-conspirators ran Red Sea, their "stock promotion" company, from the supposed safety of San Jose, Costa Rica, where they hoped to cheat U.S. investors with impunity.  Furthermore, they purported to structure their company as a law firm in an effort to

14

shield Red Sea's dealings with its clients from law enforcement by cloaking the company with the attorney-client privilege.  Because of its sophisticated nature, schemes such as the defendant's are difficult to detect, investigate and prosecute.  The sentence in this case should reflect that.

In short, a substantial sentence is necessary in this case to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to deter the defendant and others from engaging in similar criminal conduct.

## CONCLUSION

The Government respectfully submits that, for the reasons explained above, Jonathan Curshen should be sentenced to a substantial term of imprisonment consistent with the advisory Guidelines of 21 to 27 months' imprisonment.

Dated:   New York, New York
             September 2, 2011


                                                    Respectfully submitted,
                                                    PREET BHARARA
                                                    United States Attorney


                                      By:   /s/ Avi Weitzman
                                                    Avi Weitzman
                                                    Assistant United States Attorneys
                                                    Tel. No.: (212) 637-1205

15

## AFFIRMATION OF SERVICE

AVI WEITZMAN hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.      I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.      On September 2, 2011, I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by electronic mail and the Court's Electronic Case Filing system on:

Joseph Grob, Esq.
Counsel for Jonathan Curshen

3.      I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated:      New York, New York
            September 2, 2011


                                        /s/ Avi Weitzman
  -
                                        AVI WEITZMAN

16